1  Roy Tuck
2  1600 E. Vista Way #85
   Vista, CA 92084
   Ph: 760-840-1551
3  roy@atozpalmtreepros.com

4  Plaintiff In Pro Se

**FILED**

Nov 21 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ MelissaE        DEPUTY

5

6

7       **IN THE UNITED STATED DISTRICT COURT**

8       **SOUTHERN DISTRICT OF CALIFORNIA**

9

10  **ROY TUCK,**                          ) Case No. **'18CV2666 BTM JLB**
                                           )
11              Plaintiff,                 ) **COMPLAINT FOR DAMAGES AND**
                                           ) **INJUNCTIVE RELIEF FOR**
12  vs.                                    ) **VIOLATIONS OF THE**
                                           )
13  **AFNI,**                              ) 1) TELEPHONE CONSUMER PROTECTION ACT
    a foreign corporation, identity unknown, )    (TCPA) 47 U.S.C. §227 *et. seq.*
14  **TRANS UNION, LLC,**                  )
    a national credit reporting agency [CRA] ) 2) FAIR DEBT COLLECTION PRACTICES ACT
15  **EXPERIAN,**                          )    (FDCPA) 15 U.S.C. §1692 *et seq.*
    a national credit reporting agency [CRA] )
16  **DOES 1-25,** inclusively,            ) 3) FAIR CREDIT REPORTING ACT
                                           )    (FCRA) 15 U.S.C. §1681 *et seq.*
17              Defendants.                )
                                           ) 4) CALIFORNIA ROSENTHAL FAIR DEBT
18                                         )    COLLECTION PRACTICES ACT
                                           )    Civil Code §1788 *et seq.*
19                                         )
                                           ) **DEMAND FOR DECLARATORY RELIEF**
20                                         ) **DEMAND FOR JURY TRIAL**
                                           )
21  ─────────────────────────────── **COMPLAINT**

22       COMES NOW, ROY TUCK, plaintiff, In Pro Se in the above-entitled case as an

23  individual hereby sues the above-named defendant's and makes the following allegations

24  and claims against *all* of these same said defendant's for strict statutory violations of:

25  1) The Telephone Consumer Protection Act **(TCPA) 47 U.S.C.§227** *et. seq*;

26  2) The Fair Debt Collection Practices Act **(FDCPA) 15 U.S.C. §1692** *et seq.*;

27  3) The Fair Credit Reporting Act **(FCRA) 15 U.S.C. §1681** *et seq.*;

28  4) The California Rosenthal Fair Debt Collection Practices Act **(RFDCPA) §1788** *et seq.*

## I.  **PRELIMINARY STATEMENT**

**1.** I, Plaintiff ROY TUCK (hereinafter "TUCK") contends that defendant's have violated such laws by repeatedly harassing the plaintiff for the past several months with an *ongoing debt collection campaign* involving numerous illegal attempts to collect an alleged but <u>nonexistent consumer debt never owed to the defendant's by the plaintiff</u>. Defendant's have colluded together on a national level to bilk thousands of unsuspecting vulnerable consumer's out of millions of dollars not owed by them to the defendant's.

**2.** The defendant's on a year round daily basis as professional debt collectors use <u>several illegal harassment techniques to acquire payments on these alleged consumer debts,</u> including using <u>the illegal threat that the defendant's will report negative credit lines on unsuspecting consumers personal credit reports</u>. *Most if **not all** of what they do is illegal on a statutory level federally*.

**3.** The time has come to unravel this national multi agency collusion of companies and LLC's who can avoid prosecution/adjudication and liability by hiding behind the other company or creating confusion amongst the consumer debt collection arena on a national level.

**4.** *Consumers across America* are getting dooped by the thousands every day by the defendant's, they *do not* conduct proper <u>investigations</u> or *re-investigations* on disputed consumer accounts.

**5.** Defendant's *do not* cease and desist their collection activities after disputes have been waged, but instead *increase their illegal consumer collection activities*. It has also been reported that defendant AFNI does not have a license to conduct business or collection activities in the State of California, and has been sued in many states for these *very same illegal collection activities.*

## II.  **JURISDICTION AND VENUE**

**6.** Jurisdiction of this Court arises under **47 U.S.C.§227(b)(3)** and also **15 U.S.C.§1692(k)(d)**. <u>All</u> defendant's have conducted business in the state of California and whether legally licensed to do so or not, therefore personal jurisdiction is established.

1       **7.** Venue is proper pursuant to **28 U.S.C.§1391b** and **California Civil Procedure**

2   **§3959(a)**. Venue in this district is proper in that plaintiff TUCK resides in San Diego

3   county, *all* of the defendant's transact daily business here, and the conduct complained of

4   occurred here.

5       **8.** This is an action for damages in excess of $50,000.00 U.S. dollars.

6                     **III.   THE PARTIES**

7       **9.** Plaintiff TUCK, a native Californian born in Glendale, CA in 1959,

8   is a natural person.

9       **10.** Upon internet information and belief plaintiff believes defendant **AFNI** is a

10  *professional consumer debt collection agency*, which amongst other things *purchases and*

11  *collects thousands of alleged consumer debts all over the United States and beyond*.

12  Plaintiff alleges defendant **AFNI** is not authorized to do business in California.

13  **AFNI** has it's corporate headquarters located at 1310 Martin Luther King Jr. Drive,

14  Bloomington, Illinois, 61701. Upon information and belief the registered CEO is

15  Ron Greene. Defendant **AFNI** is an entity which *professionally collects consumer debts*

16  which among other activities, is a*"furnisher"* of negative consumer credit information

17  directly to all three of the largest national Credit Reporting agencies [ hereinafter "CRA'S.]

18      **11.** Upon information and belief defendant **TRANS UNION, LLC**.,

19  (hereinafter "T.U.") is one the *three largest national "CRA'S"* which reports and maintains

20  up to date consumer credit files all over the United States and beyond, **T.U.** is also

21  authorized to do business in California, with a corporate headquarters located at 555 W.

22  Adams Street, Floors 2-9, Chicago, Illinois, 60661. Upon information and belief the

23  registered CEO is James M. Peck. Defendant **T.U.** is an entity which among other activities,

24  is a collector and *"furnisher"* of positive and negative consumer credit information.

25      **12.** Upon information and belief defendant **EXPERIAN**., is one the *three largest*

26  *national CRA'S* which reports and maintains up to date consumer credit files all over the

27  United States and beyond, **EXPERIAN** is also authorized to do business in California,

28  with a corporate headquarters located at 475 Anton Blvd., Costa Mesa, CA. 92626.

1 | Upon information and belief the registered *CEO is Brian Cassin*. Defendant **EXPERIAN**
2 | is an entity which among other activities, is a "*furnisher*" of negative consumer credit information.

3 |     **13.** **Does 1-25** inclusively, hereto, will be referred to as "*credit bureau defendants*"
4 | or "*credit agency defendants*", Does 1-25 are/is a consumer creditor which, among other
5 | activities, reports allegedly delinquent consumer debts to credit bureaus and is a "*furnisher*"
6 | of negative consumer credit to credit bureau defendants.

7 |     **14.** Defendant's **Does 1-25**, are individuals and business entities, form unknown,
8 | doing business in the State of California as credit reporting agencies, debt collection
9 | agencies, creditors or other persons or entities which engage in credit reporting and/or debt
10 | collection. **Does 1-25**, Inclusively, includes individuals or business entities doing business
11 | in the State of California as credit reporting agencies, debt collectors and/or creditors who
12 | have refused to delete accounts of plaintiff that were procured through identity theft, mixed
13 | file or other manner of recording an inaccurate credit account, even after plaintiff has
14 | notified them of the false or inaccurate derogatory consumer credit information, and also
15 | who have reported such accounts as derogatory credit references to all [3] three CRA'S.

16 |     **15.** Plaintiff TUCK does not know the true names and capacities, whether
17 | corporate, partnership, associate, individual or otherwise of defendants sued herein
18 | as **Does 1-25**, inclusively under the provisions of **Section §474 of the California Code of**
19 | **Civil Procedure**. Plaintiff TUCK is informed and believes and on that basis alleges that
20 | defendants Does 1-25, inclusively, are in some manner responsible for the acts, occurrences
21 | and transactions as officers, directors or managing agents of defendants or as its agents,
22 | servants, employees and/or joint ventures and as set forth in this Complaint, and that each
23 | of them are legally liable to plaintiff, as set forth below and herein:

24 |     **a.** Said Officers, directors or managing agents of the above-named defendant's
25 | personally acted willfully with respect to the matters alleged in this Complaint;

26 |     **b.** Said Officers, directors or managing agents of the above-named defendant's
27 | personally authorized, approved of, adopted and/or ratified the illegal acts alleged herein,
28 | or the agents, servants, employees and/or joint ventures of defendants did so act;

**c.** Said Officers, directors or managing agents of defendant's **AFNI, T.U., EXPERIAN and Does 1-25** personally participated in the acts alleged herein by the Plaintiff;

**d.** Said Officers, directors or managing agents of defendant's AFNI, T.U., EXPERIAN and Does 1-25 personally had close supervision of their agents, servants, employees and/or joint ventures of defendants;

**e.** Said Officers, directors or managing agents of defendant's AFNI, T.U., EXPERIAN and Does 1-25 personally were familiar with the facts regarding the matters alleged herein;

**f.** Said Officers, directors or managing agents of defendant's AFNI, T.U., EXPERIAN and Does 1-25 ***personally failed to properly investigate and re-investigate the circumstances appertaining to the acts alleged herein***. They also failed and refused to repudiate the herein alleged actions and failed to redress the harm done to plaintiff TUCK.

**g.** Further, said Officers, directors, or managing agents of defendant's AFNI, T.U.,EXPERIAN and Does 1-25 failed and refused to punish or discharge the said agents, servants, employees and/or joint venturers of the defendant's. Plaintiff will seek leave to amend this Complaint to set forth the true names and capacities of the said fictitiously named defendant's Does 1-25 as enumerated above, together with appropriate charging allegations, when learned.

**16.** Plaintiff is informed and believes, and thereon alleges that at all relevant times herein each defendant AFNI, T.U., EXPERIAN and Does 1-25 whether actually or fictitiously named, was the principal, joint venturer, agent, servant or employee of each other defendant, and in acting as such within the course, scope and authority of such relationship, took some part in acts and  omissions hereinafter set forth, by reason of which each defendant is liable to plaintiff for the relief prayed for in this Complaint, and any future Amended Complaint. Further, plaintiff alleges that each act alleged herein, whether by named defendant's or fictitiously named defendant's or otherwise, was expressly authorized or ratified, as these terms are used in California Civil Code Section §3294(b), by each and every other defendant whether named or fictitiously named.

1    **17.** Collectively, defendant's AFNI, T.U., EXPERIAN and Does 1-25 hereto will be

2    referred to as "credit bureau Defendants" or "credit agency Defendants" - is a consumer

3    creditor which, among other activities, reports allegedly delinquent consumer debts to credit

4    bureaus and is a "*furnisher" of negative consumer credit to credit bureau defendant's*.

5    ## IV.  FACTUAL ALLEGATIONS

6    **18.**    Plaintiff TUCK alleges defendant's AFNI and Does 1-25 inclusively, are

7    professional *consumer debt collectors*, and are attempting to collect a *consumer debt*

8    subject to the Fair Debt Collection Practices Act, **15 U.S.C. §1692 *et seq.*(FDCPA)**,

9    defendant's AFNI and Does 1-25 did not at anytime, **ever** have **any** *established business*

10   *relationship of any kind* with Plaintiff TUCK.

11   **19.**   Defendant's AFNI and Does 1-25 inclusively are attempting to collect on a

12   *consumer account* that **never** belonged to Plaintiff TUCK.

13   **20.**    Plaintiff TUCK is a *consumer,* as the *purported alleged debt* is a

14   *consumer debt,* from an *unknown person.*

15   **21.**   Referring to the preceding paragraphs, because defendant's AFNI and Does 1-

16   25 inclusively, are all entities which are all *attempting to collect consumer debts from the*

17   *plaintiff* which plaintiff did not incur; brings defendant's AFNI and Does 1-25 well within

18   the ambit of the **California Rosenthal Fair Debt Collection Practices Act**

19   **Civil Code §1788 *et seq.* ("RFDCPA")** .

20   **22.**   Plaintiff TUCK has ***never had prior or present established relationship***

21   with defendant's AFNI and Does 1-25 inclusively.

22   **23.**    Plaintiff TUCK received the very **first** illegally placed consumer debt

23   collection call on February 22, 2018, at 2:36pm. When plaintiff TUCK answered this

24   first illegally placed call, the defendant's AFNI and Does 1-25's employee/staff member

25   explained to him that ["they" defendant's] were looking for a past/present client of "theirs"

26   who goes by the name of ROY TUCK,["they" the Defendant's employee ] went on to

27   explain in detail that Mr. TUCK presently owed ["them" defendant's AFNI and Does 1-25]

28   for an alleged  past due $448 dollar Cox Cable bill.

**24.** Plaintiff TUCK informed the person on the phone that "*this phone number the defendant just called was his emergency cell phone number*, and "*he did not ever remember giving this emergency cell phone number to anyone other than his wife and mother*, he went on to inform them that he had in past month informed the defendant companie[s] *verbally and in writing that he disputed the same alleged debt[s].*

**25.** Plaintiff TUCK verbally told that agent/employee/bill collector on this same very **first** illegally placed call "to **never** call his emergency cell phone number again!" and *he did not owe* defendant's AFNI and Does 1-25 inclusively *any monies at any time ever!*

**26.** "Plaintiff TUCK during this *first* illegally placed call revoked [his] consent to ever be called again by the defendant's, pursuant to- **[Reardon, 115 F. Supp. 3d at 1102]**.

**27.** Plaintiff TUCK followed this verbal telephone request up with written certified mailed demands **[SEE EXHIBITS C,D,E, &F]** to stop all illegal consumer collection calls placed to the plaintiff's emergency cell phone number and to "cease and desist" **all** further collection activities on **all** consumer account[s] allegedly owed by plaintiff TUCK to defendant's. *All of these requests were ignored by all of the above-named defendant's and all requests to settle things informally fell on deaf ears.*

**28.** All [27] twenty seven illegally placed calls by the defendant's are separate individual *strict statutory violations*. [ *i.e. if I run into your car on Monday and then run into your car again on Friday, that is two separate strict statutory violations of this rule*].

**29.** Defendant's AFNI and Does 1-25 all ignored at the onset *all* of Plaintiff TUCK'S numerous verbal and certified written requests to *cease and desist* their collection efforts immediately, instead opting to *increased their illegal collection activities* for more than [9] nine months to the date of the filing of this Complaint.

**30.** Defendant's are *still placing harassing illegal debt collection calls* to plaintiff TUCK and placing *negative credit lines on his credit reports* to illegally leverage TUCK to pay a debt *he does not owe*, nor *did he ever owe to anyone*.

**31.** This *alleged debt* originated from "*identity theft*" and was reported and disputed numerous times as *identity theft* with all three CRA'S by the plaintiff.

**32.** Following FCRA guidelines plaintiff TUCK submitted in writing to all three CRA's numerous requests for _investigations_ and _re-investigations,_ but the three CRA's _completely failed_ to _investigate_ nor _re-investigate_ the disputed negative credit line[s].

**33.** All defendant's **completely failed** to _cease and desist any/all further collection activities after the alleged consumer debt was disputed by plaintiff._

**34.** Plaintiff TUCK, never, _at any time,_ signed _**any**_ contracts, nor applied for _**any**_ credit nor did he agree to obtain any Cox Cable bills [in his name] with **any** of the above-named defendant's.

**35.** Defendant's representative on the phone assured plaintiff TUCK that a _record of the call was made,_ that their consumer clients name TUCK would be removed from their debt collection calling list, and that _no further calls_ from defendant's AFNI and Does 1-25 would be placed to Plaintiff TUCK'S emergency cell phone number 760-840-1551.

**36.** To date, defendant's AFNI and Does 1-25 have placed more than [27] twenty seven illegally placed debt collection calls to plaintiff's private emergency cell phone number, all of which are _active statutory violations placed within the past four (4) years time._

**37.** Plaintiff TUCK _has **no** contractual obligation to pay_ defendant's AFNI and Does 1-25 **anything.**

**38.** Plaintiff TUCK **has never** given defendant's AFNI and Does 1-25 _**express written permission**_ to call Plaintiff TUCK'S emergency cellular phone.

**39.** Defendant's AFNI and Does 1-25 **has never** _validated or verified the alleged consumer debt_ pursuant to United States statute **15 U.S.C. §1692g,** even thought they were requested to do so numerous times by certified U.S. mail. defendant's all completely failed to conduct proper _investigations_ and _re-investigations_ [**SEE EXHIBITS A,B, G & H**]

**40.** Even up to today's date of the filing of this Complaint, defendant's AFNI and Does 1-25 continue their ongoing harassing debt collection campaign, are continuing to illegally report to all [3] three CRA'S [2] two _disputed/bogus_ negative consumer credit lines affiliated with Plaintiff TUCK'S name and social security number, and are continuing to illegally place harassing debt collection calls to Plaintiff TUCK.

**41.**   This ongoing illegal debt collection campaign waged by defendant's AFNI and Does 1-25 is *presently grossly affecting plaintiff TUCK'S daily credit worthiness* and his *ability to obtain credit cards, fair housing, or loans for the past several months now*.

**42.**   From February 22, 2018 to the date of the filing of this Complaint defendant's AFNI and Does 1-25 illegally placed more than [27] twenty seven intrusive harassing debt collection calls to plaintiff TUCK'S emergency San Diego area T-Mobile cell phone number 760-840-1551, of which, **all** [27] twenty seven illegally placed collection calls fall well within the four (4) year TCPA statute of limitation period, [i.e. *four (4) years from when the violation was "first discovered"*].

**43.**   During the discovery phase of this trial plaintiff may seek records going back *at least four years* - **SEE Jenkins v. G.C. Services, Ltd. P'Ship, 2012 WL 1067947, 898, (W.D.N.C. Mar. 29, 2012)** — *defendant ordered to identify date and time of all calls to plaintiff's number for past [4] four years, and whether made by a person or an automatic telephone dialing system,* ["ATDS" system].

**44.**   From February 22, 2018 to today's date, defendant's AFNI and Does 1-25 illegally placed more than [27] twenty seven consumer debt collection calls to plaintiff TUCK'S emergency cell phone, ignoring plaintiff TUCK's numerous oral and written demands **not** to call plaintiff's cell phone *after receiving the very first illegally placed call*.

**45.**   Some or all of the more than [27] twenty seven consumer collection calls illegally placed by the defendant's AFNI and Does 1-25 from office numbers (866) 377-8844,  (800) 371-3645 and (800) 767-2364 were *intentionally, inadvertently mistakenly, and illegally* placed to plaintiff TUCK'S San Diego County based emergency T-Mobile cell phone number (760) 840-1551, were illegally placed using a phone system with automatic telephone dialing system ["ATDS" system] *"capabilities"*, or,  illegally placed telephone debt collection calls using ["ATDS" system] *artificial and/or prerecorded voices,* all calls attempting to collect a consumer debt by leaving a prerecorded message, *and/or* threatening to continue collection actions for nonpayment of an alleged consumer debt.

1    **46.** Some of the calls from defendant's AFNI and Does 1-25 would come to

2  Plaintiff's cell phone, when answered plaintiff would say "hello", there would follow a

3  pause, then an automated pre-recorded message would play, *stating similar*: "If you are?

4  Roy Tuck, Press one". When pressing one a further message would continue. The call was

5  not made by human hands nor any conversation made with a human being. This is a

6  *separate and distinct damage cause of action* and clear cut *violation[s] of strict liability*

7  *statutes of the **Telephone Consumer Protection Act "TCPA"***.

8    **47.** Plaintiff Tuck disputed the alleged negative credit lines placed on his credit

9  files by defendant's AFNI and Does 1-25 by mailing dispute letters directly to all three

10  CRA's via U.S. mail please **[SEE EXHBIT A]** 1ST dispute letter sent to Trans Union dated

11  April 10, 2018, **[SEE EXHIBT B]** 1st dispute letter sent to EXPERIAN dated April 10, 2018.

12    **48.** In an attempt to informally settle the above-pled violations plaintiff TUCK

13  sent [4] four different written certified letters to defendant's AFNI and Does 1-25. The first

14  letter mailed by U.S. Certified Mail Receipt #7104 0510 0001 2044 0094, dated April 10, 2018

15  *to date went completely un-answered* by defendant's - **[SEE EXHIBIT "C"]** .

16    **49.** The second informal settlement attempt letter was mailed by U.S. Certified

17  Mail Receipt #7014 0510 0001 2044 0094, dated May 20, 2019 **[SEE EXHIBIT "D"]**

18  *to date went completely un-answered by all defendant's*.

19    **50.** The third informal letter was *a much more serious* Notice of Intent to Sue and

20  Commence Action letter with a condition precedent to a damage suit being filed in the

21  Southern District Court of California was sent to defendant's AFNI and Does 1-25 again

22  via U.S. Certified Mail Receipt #7014 0510 0001 2044 0094 was dated July 22, 2018

23  **[SEE EXHIBIT "E"]** even with the threat of a federal lawsuit being filed defendant AFNI

24  *to date chose to ignore all attempts by plaintiff at informal resolutions or remedies.*

25    **51.** The fourth letter was sent to defendant's AFNI and Does 1-25 again via

26  U.S. Certified Mail Receipt #7014 0510 0001 2044 0768 was dated November 06, 2018

27  **[SEE EXHIBIT "F"]** to date also went completely un-answered by all defendant's.

28

**52.**   Plaintiff Tuck following TCPA, FCRA and FDCPA guidelines re-disputed the alleged negative credit lines placed on his credit files by defendant's AFNI and Does 1-25 by mailing re-dispute letters by U.S. mail. Please **[SEE EXHBIT G]** 2nd re-dispute letter sent to Trans Union dated May 20, 2018, **[SEE EXHIBIT H]**  2nd  dispute letter sent to EXPERIAN dated May 20, 2018. As of today's date the two CRA's completely failed to properly investigate and re-investigate the plaintiff's multiple dispute requests and to this date the negatively reported consumer credit lines mentioned throughout this lawsuit still remain on plaintiff TUCK'S personal credit files.

**53.**   Plaintiff TUCK assumed that defendant's AFNI and Does 1-25 illegal debt collection calls and  illegal reporting of negative credit lines on his credit reports would stop or be removed soon after the mailing of the first one or two letters and after the third letter Notice's of Intent to Litigate and even an additional *fourth letter*, they did not.

**54.**   Defendant's AFNI and Does 1-25 illegally placed more than [27] twenty seven debt collection calls *after* plaintiff TUCK notified defendant's AFNI and Does 1-25 numerous times over many months to stop. The number of illegal calls is still increasing.

**55.**   Defendant's AFNI and Does 1-25 intentionally, willfully and knowingly violated multiple strict liability statutes of the Telephone Consumer Protection Act (TCPA) with malice and disregard for the plaintiff.

**56.**   Defendant's AFNI and Does 1-25 **do not care**.

**57.**   During all the above referenced [27] twenty seven illegally placed debt collection calls to plaintiff TUCK'S emergency cellular phone, defendant's AFNI and Does 1-25 *staff/personnel **asserted a right which it lacks, to wit, the right to enforce a debt***.

**58.**   On all the above-referenced [27] twenty seven illegally placed calls to plaintiff TUCK'S emergency cell phone, defendant's AFNI and Does 1-25 *failed to identify that they were professional debt collectors attempting to collect a consumer debt*.

**59.**   On all the above-referenced [26] nineteen illegally placed calls to plaintiff's cellular phone, defendant's AFNI and Does 1-25 trespassed on plaintiff and plaintiff incurred multiple injuries as his peace was disturbed, plaintiff's personal time was wasted, plaintiff was charged for the calls, plaintiff incurred wear and tear of his emergency cell phone and wear of his cell battery.

### V.   FIRST CAUSE OF ACTION VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT TCPA 47 U.S.C. §227(b)(1)(A) AND §227(b)(1)(A)(iii) AGAINST DEFENDANT'S AFNI and DOES 1-25

**60.**  Plaintiff TUCK re-alleges and incorporates by reference the facts and allegations contained in paragraphs 1 through 59 above as though fully set forth herein.

**61.**   This damage is for the more than [27] twenty seven illegally placed calls by defendant's AFNI and Does 1-25 to plaintiff's emergency cell phone, [each call a separate distinct individual strict statutory violation of the statute], [i.e. "If I hit your car on Monday then again hit it on Friday, that's two separate distinct statutory violations].

**62.**   As a separate and distinct damage and cause of action, defendant's AFNI and Does 1-25 has demonstrated intentional and willful or knowing non-compliance with **47 U.S.C. §227(b)(1)(A) and §227(b)(1)(A)(iii)**, by continually violating strict liability statute; by the following:

**(TCPA) 47 U.S.C. §227(b)(1)(A) states in part;**

**(b)RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT**

**(1) PROHIBITIONS - It shall be unlawful for any person within the United States, or person outside the United States if the recipient is inside the United States -**

**(A) to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice-**

**(TCPA) 47 U.S.C. §227(b)(1)(A)(iii) states in part;**

**(1) PROHIBITIONS— It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—**

**(A) to make any call (other than a call made for emergency purposes or made with the prior *express written consent* of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—**

**(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is called for the call;**

63.   Defendant's AFNI and Does 1-25 have caused/committed at least [27] twenty seven separate and distinct TCPA strict statutory violations with their illegal debt collection activities over the past several months using telephone[s] with automatic dialing "capabilities", [ATDS].

**TCPA 6.9.2a.6 Allegations of Harm in TCPA Cases:**

64.   Plaintiff TUCK hereby **SO STATES** the following Allegations of Harm pursuant to the Telephone Communications Practices Act **TCPA Allegations of Harm 6.9.2a.6** as follows:

• **6.9.2a.6 States in Part**

**Congress enacted the TCPA to prevent real harm. Congress found that "automated" or pre-recorded calls "robocalls"are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion.**

65.   Congress also announced that there were over 5 billion robocalls or illegally placed calls using equipment that had ATDS capabilities this year of 2018.

66.   Defendant's AFNI and Does 1-25's [27] twenty seven illegally placed debt collection calls, messages or texts harmed the plaintiff by causing the very harm that Congress sought to prevent — a "***nuisance and invasion of property***".

67.   Defendant's AFNI and Does 1-25 [27] twenty seven illegally placed debt collection calls, messages or texts harmed the plaintiff by trespassing upon and interfering with the plaintiff's rights and interests in plaintiff's emergency cellular phone.

68.   Defendant's AFNI and Does 1-25 [27] twenty seven illegally placed debt collection calls, messages or texts harmed the plaintiff by intruding upon plaintiff TUCK's seclusion.

69.   Defendant's AFNI and Does 1-25 more than [27] twenty seven illegally placed debt collection calls, messages or texts harmed the plaintiff by causing plaintiff aggravation and annoyance.

70.   Defendant's AFNI and Does 1-25 [27] twenty seven illegally placed debt collection calls, messages or texts harmed the plaintiff by wasting plaintiff's valuable time.

**71.** Defendant's AFNI and Does 1-25 [27] twenty seven illegally placed debt collection calls, messages or texts harmed the plaintiff by depleting the battery life on plaintiff's emergency cellular phone.

**72.** Defendant's AFNI and Does 1-25 more than [27] twenty seven illegally placed debt collection calls, messages or texts harmed the plaintiff by using up a lot of his [emergency call or text minutes] allocated to plaintiff by plaintiff's San Diego County T-Mobile cellular telephone service provider.

**73.** Defendant's AFNI and Does 1-25 [27] twenty seven illegally placed debt collection calls, messages or texts harmed the plaintiff by using date storage space in plaintiff TUCK'S emergency cell phone.

**74.** Plaintiff TUCK has article III standing.

**75.** Plaintiff TUCK spoke with Defendant's AFNI and Does 1-25 about the more than [27] twenty six illegally placed debt collection calls, and defendant's AFNI and Does 1-25 staff/agent/ assured plaintiff TUCK that all debt collection attempts the calls would stop. Nothing was farther from the truth.

**76.** Defendant's AFNI and Does 1-25 not only refused to cease and desist all consumer debt communication and illegal phone calls, but instead continued to report the alleged debt to all three national CRA'S, then went on to place an onslaught of even more illegal debt collection calls to the plaintiff for over an almost [9] nine month period of time, continually violating 47 U.S.C. §227 more than [27] twenty seven separate times.

**77.** Defendant's AFNI and Does 1-25 has damaged Plaintiff by violations of 47 U.S.C. §227 as follows:

§227(b)(1)(A) by using a phone with automatic dialing system ***capabilities*** to call TUCK.
§227(b)(1)(A) by placing a call to TUCK without an ***emergency purpose***.
§227(b)(1)(A) by placing a call to TUCK without ***express written consent*** by TUCK.
§227(b)(1)(A) by placing a call to TUCK with an ***artificial or pre-recorded voice***.
§227(b)(3)(B) by placing a call to TUCK ***without an established business relationship***.
§227(b)(1)(A)(iii) by placing a call to TUCK for which TUCK is ***charged for the call***.
§227(b)(1)(A)(iii) placing a call ***without prior express written permission*** to call TUCK.

**78.** 47 U.S.C. §227 *et al.* states that the statutory fine associated with the **first un-intentional debt collection call** carries a damage amount of $500.

**79.** AFNI and Does 1-25 directly violated 47 U.S.C. §227 *et al.* by illegally placing the **first un-intentional** debt collection call on February 22, 2018, and now owes the plaintiff $500 dollars for this first TCPA strict statutory violation.

**80.** Each individual distinct call placed call by defendant's AFNI and Does 1-25 staff after the first **un-intentional illegal call** is subject to *treble* damages or $1,500 for each and every additional call pursuant to 47 U.S.C.§227(b)(3) as each additional call was *intentional and willful*.

**81.** After the **first un-intentional debt collection call** each and every distinct **intentionally placed debt collection call** made by defendant's AFNI and Does 1-25 carries a damage amount of $1,500 each. This means each and every **intentionally placed debt collection call** will damage the Professional Debt Collection Agency defendant's AFNI and Does 1-25 pursuant to 47 U.S.C.§227(b)(3).

**82.** Defendant's AFNI and Does 1-25 have demonstrated *willful or knowing non-compliance* with 47 U.S.C. §227(b)(1)(A) and §227(b)(1)(A)(iii) by calling the plaintiff's emergency cell number more than [27] twenty seven times **after** their first **intentionally** placed call of February 22, 2018, moreover, even **after** being told by plaintiff TUCK on the very first **un-intentionally** placed call to **never** call his emergency cell phone number again.

**83.** Plaintiff TUCK and defendant's AFNI and Does 1-25 (**1**) *never had* an *established business relationship* within the meaning of 47 U.S.C. §227, (**2**) Plaintiff *did not* give defendant's AFNI and Does 1-25 his personal emergency cell phone number, (**3**) Defendant's AFNI and Does 1-25 *did not* have *express written permission* to call plaintiff's emergency cell phone, (**4**) Plaintiff notified defendant's AFNI and Does 1-25 *verbally and in writing to stop calling* plaintiff's emergency cell phone, (**5**) Plaintiff was charged for each call. Plaintiff is entitled to damages of $1,500 for each and every additional statutory violation pursuant to 47 U.S.C. §227(b)(3)(C).

1    **WHEREFORE,** Plaintiff TUCK demands judgement for statutory damages in

2    excess of $39,500.00, U.S. dollars plus attorneys fees and costs, against defendant's

3    AFNI and Does 1-25 pursuant to TCPA 47 U.S.C. §227(b)(1)(A) and TCPA 47 U.S.C.

4    §227(b)(1)(A)(iii)

5
### VI.  SECOND CAUSE OF ACTION
### VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT
### (FDCPA) 15 U.S.C. §1692 *et seq*.
6
### AGAINST DEFENDANTS AFNI AND DOES 1-25
7

8    **84.**   Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional

9    allegations and general factual allegations in paragraphs 1 thru 83 herein.

10   **85.**   Plaintiff TUCK is a *"**consumer**"* within the meaning of

11   **(FDCPA) 15 U.S.C.§1692a(3)**.

12   **86.**   Defendant's AFNI and Does 1-25 are all *"**debt collectors**"*within the meaning

13   of **(FDCPA) 15 U.S.C. §1692a(6)**.

14   **87.**   Defendant's AFNI and DOES 1-25's violations include but are not limited to

15   the following:

16   **a)**   Defendant's AFNI and Does 1-25 violated **(FDCPA) 15 U.S.C.§1692c(a)(1)**

17   by contacting plaintiff TUCK at a *time and place known to be inconvenient*.

18   **b)**   Defendant's AFNI and Does 1-25 violated **(FDCPA) U.S.C. §1692d** *by engaging in*

19   *conduct that the natural consequence of is to harass, abuse, and oppress* plaintiff TUCK.

20   **c)**   Defendant's AFNI and Does 1-25 violated **(FDCPA) U.S.C.§1692d(2)**

21   *by using abusive language in an attempt to collect an alleged debt* from the plaintiff.

22   **d)**   Defendant's AFNI and Does 1-25 violated **(FDCPA) U.S.C.§1692d(5)** when

23   they *caused* plaintiff TUCK'S emergency telephone *to ring repeatedly and continuously*

24   *more than [27] twenty seven times over a several month period of time with the intent to*

25   *annoy, abuse, and harass the Plaintiff*.

26   **e)**   Defendant's AFNI and Does 1-25 violated **(FDCPA) U.S.C.§1692e** *by making*

27   *false, deceptive and misleading representations in connection with the alleged consumer*

28   *debt collection[s]*.

**f)** Defendant's AFNI and Does 1-25 violated (**FDCPA**) 15 U.S.C. *§1692e(2)* *by falsely representing the character, amount, or legal status of any debt.*

**g)** Defendant's AFNI and Does 1-25 violated (**FDCPA**) 15 U.S.C. *§1692e(4)* *by misrepresenting that non-payment of any debt will result in the arrest or imprisonment of any person.*

**h)** Defendant's AFNI and Does 1-25 violated (**FDCPA**) 15 U.S.C. *§1692e(5)* *for threatening to take any action against the plaintiff that cannot legally be taken or that is not intended to be taken.*

**i)** Defendant's AFNI and Does 1-25 violated (**FDCPA**) 15 U.S.C.§1692e(8) *by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt was disputed and re-disputed.*

**j)** Defendant's AFNI and Does 1-25 violated (**FDCPA**) 15 U.S.C.§1692e(10) *by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.*

**k)** Defendant's AFNI and Does 1-25 violated (**FDCPA**) 15 U.S.C.§1692f(1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless such amount is expressly authorized by the agreement creating the debt or permitted by law.*

**l)** Defendant's AFNI and Does 1-25 violated (**FDCPA**) 15 U.S.C. §1692g by, **1)** within five (5) days after the initial communication with plaintiff in connection with the collection of any debt, **failing** to send plaintiff a written notice containing a statement that unless the consumer, within thirty (30) days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; **2)** a statement that if the consumer notifies the debt collector in writing the thirty (30) day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgement against the consumer and a copy of such verification or

1  judgement will be mailed to the consumer by the debt collector; and a statement
2  that, upon the consumers's written request within the thirty (30) day period, the
3  debt collector will provide the consumer with the name and address of the original
4  creditor, if different from the current creditor.

5  **WHEREFORE,**  Plaintiff, ROY TUCK, respectfully requests judgement be
6  entered against Defendant's AFNI and Does 1-25 for the following:

7  **88.** Declaratory judgement from the honorable Court that the Defendant's AFNI and
8  Does 1-25 conduct violated the Fair Debt Collection Practices Act **15 U.S.C. *§1692 et seq.***

9  **89.**  Statutory damages of $1,000.00 U.S. dollars for *each* violation pursuant to the
10  Fair Debt Collection Practices Act **15 U.S.C. *§1692 et seq.***

11  **90.**  Costs and reasonable attorneys fees pursuant to the Fair Debt Collection
12  Practices Act *15 U.S.C. §1692 et. seq.*

13  **91.**  Any other relief that this Honorable Court deems appropriate.

## VII.  THIRD CAUSE OF ACTION
### VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA),
### 15 U.S.C. §1681 et *seq.* WILLFUL OR NON-COMPLIANCE BY DEFENDANT'S
### AFNI, T.U., EXPERIAN AND DOES 1-25

17  **92.**  Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional
18  allegations and general factual allegations in paragraphs 1 thru 91 herein.

19  **93.**  Defendant's AFNI and Does 1-25 are professional debt collectors with
20  corporate offices located inside the continental United States.

21  **94.**  Defendant's  T.U. and EXPERIAN are two out of the three largest national
22  consumer credit reporting agencies or CRA'S.

23  **95.**  Just after New Years day of January 2018 Plaintiff TUCK, who is not a minor,
24  checked his consumer credit reports from all three national credit reporting agencies
25  Experian, Equifax, and Trans Union (collectively "CRAs"), and discovered *at least [2] two*
26  separate and individual consumer credit line accounts collectively placed in negative status
27  being reported by T.U., EXPERIAN originating from a professional debt collecting
28  company that Plaintiff TUCK had never heard of before or did not recognize named AFNI.

**96.**   These new negatively reported credit lines were unfamiliar to Plaintiff TUCK, as he did not recall ever doing business with any company named AFNI nor have any old unpaid Cox Cable bills. Also *he was **never** informed by **any** of these furnishers* defendant's AFNI, T.U., EXPERIAN and Does 1-25 *of their negative credit reporting.* An example of these negatively reported accounts is enclosed herein, **[SEE EXHIBIT "I"]**

**97.**   On several occasions between January 2018 and May of 2018 plaintiff TUCK contacted the defendant's AFNI, T.U., EXPERIAN and Does 1-25 disputing and re-disputing these bogus negatively reported accounts in writing pursuant to **15 U.S.C. §1681s-2(b) (FCRA)**.

**98.**   On April 10, 2018, May 20, 2018, July 22, 2018 and November 06, 2018, following his credit bureau disputes and re-disputes, Plaintiff TUCK sent letters to these same defendant's AFNI, T.U., EXPERIAN and Does 1-25 in which he ***demanded*** documentation substantiating the existence, ownership and ***accuracy*** of the negative consumer credit accounts reported by each of them, ***otherwise their immediate deletion from his credit file***.

**99.**   Upon receipt of Plaintiff's disputes these same defendant's AFNI, T.U., EXPERIAN and Does 1-25 each chose not only to ignore Plaintiff TUCK'S oral and written requests,  but also continued to report the [2] two disputed accounts to CRAs, without notice that the accounts had been disputed by Plaintiff TUCK.

**100.**   All throughout the investigation period and thereafter up to today's date defendant's AFNI, T.U., EXPERIAN and Does 1-25 failed to properly address plaintiff's direct disputes and re-disputes with them and *failed to provide the requested* **"verification" and "validation"** numerous time for these same [2] two disputed negative consumer accounts.

**101.**   During February thru November of 2018 Plaintiff TUCK followed up with the defendant's AFNI, T.U., EXPERIAN and Does 1-25 on multiple occasions in writing, submitting and re-submitted his requests/disputes and *demanding immediate deletion of the unverified accounts due to lack of verification*, but each of these correspondences went *unanswered*, *ignored*, or were improperly handled and responded to, all of his efforts and correspondences proved *unsuccessful* in attaining *defendants' cooperation*.

**102.**   Regardless of Plaintiffs' numerous attempts to seek defendant's cooperation defendant's each one of them continuously, to date, failed to answer back to plaintiff with appropriate proof of investigation or re-investigation to acquire verification/validation of the information in dispute and ***totally and completely failed to take corrective action***.

**103.**   These inaccurate consumer credit accounts negatively reflect upon plaintiff as a consumer, borrower/debtor and they negatively impact his creditworthiness and financial standing in an ever increasing way.

**104.**   Plaintiff TUCK has suffered financial and emotional distress as a direct result of defendant's violations, which include but are not limited to the following:

**a.**   Actual damages arising from monetary losses related to denials to new credit, loss of use funds, loss of credit and loan opportunities, excessive and/or elevated interest in financial charges;

**b.**   Out of pocket expenses associated with communicating with Defendant's, disputing the negative credit information, and fees paid to attorneys and credit professionals for the assistance attained in the process;

**c.**   Emotional distress and mental anguish associated with having derogatory credit information transmitted about plaintiff to other people both known and unknown;

**d.**   Decreased credit score and creditworthiness, which may result in the inability to obtain credit, employment or affordable housing without larger security deposits on future attempts.

**105.**   Defendant's knowingly and willfully violated the FCRA. Defendant's violations include, but are not limited to the following:

**a.**   Failing to inform plaintiff about negative credit reporting made on his credit report, prior to within five (5) days of furnishing a collection account to the CRA'S, in violation of **(FCRA) 15 U.S.C. §1681s-2(a)(7)(A),;**

**b.**   Failing to conduct a proper and complete investigation of disputed negative consumer credit information upon the receipt of Plaintiff TUCK's disputes and re-disputes in violation of **(FCRA) 15 U.S.C.§1681s-2(a)(8)(E)**;

**c.**   Verifying disputed accounts with the CRA'S prior to conducting a thorough investigation and re-investigation without having substantiating support for such verification;

**d.**   Reporting disputed information to the CRA's, without notice of plaintiff's dispute, during the investigation period and prior to providing verification of accuracy in violation of **(FCRA) 15 U.S.C.§1681s-2(a)(3)**;

**e.**   Out of pocket expenses associated with the communication with defendants, disputing the negative consumer credit information, and fees paid to attorneys and credit professionals for their assistance attained in the process.;

**106.**   The **(FCRA) 15 U.S.C.§1681s-2b** defines the _permissible purposes_ for which a person may obtain a consumer credit report.

**107.**   Such _permissible purposes_ as defined by **(FCRA) 15 U.S.C.§1681s-2b** are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

**108.**   Plaintiff TUCK has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, nor received a bona fide offer of credit from any/all of the defendant's AFNI, and Does 1-25

**109.**   At _**no time ever**_ did Plaintiff TUCK give his consent for defendant's AFNI, T.U. and Does 1-25 to acquire his consumer credit report from _**any**_ consumer reporting agency ("CRA").

**110.**   Defendant's AFNI, T.U., EXPERIAN and Does 1-25 have demonstrated willful and/or knowing non-compliance with the (FCRA), **15 U.S.C.§1681s-2b** and repeatedly violating plaintiff TUCK's right to privacy.

111.    Defendant's AFNI, T.U. EXPERIAN and Does 1-25 , had a *duty* to properly ascertain if there was any legitimate permissible purpose before obtaining plaintiff's consumer credit report or reporting on his credit file.

112. Defendant's AFNI, T.U. EXPERIAN and Does 1-25, ***breached said duty by failing to do so.***

**WHEREFORE,**   Plaintiff, ROY TUCK, respectfully requests judgement be entered against defendant's AFNI, T.U. and Does 1-25 for the following:

113.    Declaratory judgement that the defendant's AFNI, T.U. and Does 1-25 illegal conduct violated the Fair Credit Reporting Act  **(FCRA) 15 U.S.C. §1681s-2b** *et seq.*

114.    Statutory damages of $1,000.00 for each violation pursuant to the Fair Credit Reporting Act **(FCRA) 15 U.S.C. §1681s-2b** *et seq.* Costs and reasonable attorneys fees pursuant to the Fair Credit Reporting Act  **(FCRA) 15 U.S.C. §1681s-2b** *et seq.* Any other relief that this Honorable Court deems appropriate.

### VII.  FOURTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CIVIL CODE §1788 et seq. BY DEFENDANT'S AFNI AND DOES 1-25

115.    Plaintiff TUCK re-alleges and restates all of the foregoing jurisdictional allegations and general factual allegations in the above paragraphs 1 thru 114 herein.

116.    Plaintiff TUCK is a *consumer* within the meaning of 15 U.S.C. §1692 *et seq.*

117.    Defendant's AFNI and Does 1-25 are *seeking to collect a consumer debt* from plaintiff TUCK as defined by **California Civil Code §1788.10(f).**

118.    The credit account[s] in question are *consumer credit transactions* as defined by **California Civil Code §1788.2(e)** as plaintiff TUCK has allegedly received property or money from defendant's or plaintiff TUCK has received an extension of credit, services, or, money which was used primarily for personal, family, or household purposes.

1   **119.**   Defendant's AFNI and Does 1-25 have damaged Plaintiff TUCK by

2   violations of **California Civil Code §1788** as follows:

3   **a.  §1788.10(c)** debt collector defendant's AFNI and Does 1-25 negative credit

4   reporting knows will defame the alleged debtor TUCK.

5   **b.  §1788.10(f)** threat by defendant's AFNI and Does 1-25 to take action which is

6   prohibited by this title.

7   **c.  §1788.11(e)** constitutes harassment.

8   **d.  §1788.12(c)** communication .. Deadbeat list (Debt Report)

9   **e.  §1788.13(j)** false representation . . threatening service termination . .

10   unless payment is made.

11   **f.  §1788.17** shall comply with provisions of **§1692b** to **§1692j**; subject to **§1692k**.

12   **WHEREFORE,** Plaintiff TUCK demands judgement for damages against

13   Defendant's AFNI and Does 1-25 for statutory damages of $1,000.00 U.S. dollars,

14   attorneys fees pursuant to **§1788.30(b)** and costs, pursuant to **§1788.30c**.

15

16   ## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues, so triable as a matter of law.

17   Respectfully submitted,

18

19   Dated this 20th day of November 2018

20

21   **ROY TUCK, PLAINTIFF IN PRO SE**

22

23

24

25

26

27

28

**VERIFICATION OF ROY TUCK**

1.    I, ROY TUCK, declare as follows:

2.    I am of age, sound mind and competent to testify to facts based on firsthand knowledge of all of the above items as so stated herein.

3.    I have been damaged financially, credit wise, socially and emotionally as a result of Defendant's AFNI, T.U., EXPERIAN and Does 1-25 unlawful actions and numerous violations as so stated in the attached Complaint . . .

4.    I have read all of the foregoing pleadings and know the facts therein so stated To be true and correct to the best of my knowledge.

5.    I declare, under the penalty of perjury to the laws of the state of California, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated this 20ᵗʰ day of November 2018

**ROY TUCK, PLAINTIFF IN PRO SE**

///
///
///
///
///
///
///
///